UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| DUSA PHARMACEUTICALS, INC., SUN PHARMACEUTICAL INDUSTRIES, INC., and SUN PHARMACEUTICAL INDUSTRIES, LTD.,<br><br>Plaintiffs,<br><br>v.<br><br>BIOFRONTERA INC., BIOFRONTERA BIOSCIENCE GMBH, BIOFRONTERA PHARMA GMBH, BIOFRONTERA NEUROSCIENCE GMBH, and BIOFRONTERA AG,<br><br>Defendants. | Civ. No. 23-20601 (RK)(JBD)<br><br>MEMORANDUM ORDER<br>(Public Version - Redacted) |

Plaintiffs move for permission to effect alternative service on several related foreign defendants,[1] all located in Germany, by serving a law firm in the United States. [Dkt. 89.] The law firm, McGuireWoods LLP ("McGuireWoods"), has entered an appearance in this case and represents a single domestic defendant, Biofrontera Inc.[2] The firm does not represent the foreign defendants here but does represent three of them in another proceeding now pending before the

---

[1] Biofrontera Bioscience GmbH, Biofrontera Pharma GmbH, Biofrontera Development GmbH, Biofrontera Neuroscience GmbH, and Biofrontera AG. The Court will refer to these defendants collectively as the "foreign defendants."

[2] Biofrontera Inc. formerly was a wholly owned subsidiary of Biofrontera AG. In October 2021, however, Biofrontera Inc. issued its own stock shares via an initial public offering and thereafter ceased its formal corporate affiliation with the Biofrontera group. While there remains an ongoing and interconnected commercial

United States Patent Trial and Appeal Board ("PTAB"). Concerned with the prospect of delays involved in efforts to serve the foreign defendants under the *Hague Convention on the Service Abroad of Judicial and Extra-Judicial Documents in Civil and Commercial Matters* ("Hague Convention" or "Convention"), plaintiffs seek the Court's permission to serve those defendants domestically through McGuireWoods. Biofrontera Inc. (through McGuireWoods) opposes the motion.

For the reasons explained below, the Court sees no legal impediment to permitting plaintiffs to serve the foreign defendants through McGuireWoods. Nonetheless, efforts to serve those defendants under the Hague Convention are underway, and the German Central Authority has initiated a dialogue with plaintiffs in connection with those efforts. In that context, prudence counsels caution. Although the Court concludes that the manner of service that plaintiffs propose is permissible, the Court is not satisfied that service through the traditional means *should be* short-circuited at this time in favor of the somewhat more unusual step of permitting domestic service through a law firm that does not represent the foreign defendants in this case. Exercising its discretion, the Court will deny the motion without prejudice to plaintiffs' right to renew it if service on the foreign defendants under the Convention has not been perfected by the end of the calendar year.

---

relationship and Biofrontera AG owns some amount of Biofrontera Inc.'s stock, Biofrontera Inc. is no longer a corporate affiliate of any of the foreign defendants.

I.  BACKGROUND

The parties to this case are, as relevant here, competing producers of photodynamic therapies designed for the treatment of certain skin diseases. This case arises from the asserted breach of a settlement agreement that resolved prior litigation between the parties in the United States District Court for the District of Massachusetts. More specifically, in March 2018, plaintiffs sued Biofrontera Inc. and the foreign defendants for patent infringement, unfair and deceptive trade practices, trade secret misappropriation, and tortious interference. McGuireWoods entered an appearance and represented all six defendants in that case. Notably, plaintiffs successfully served the foreign defendants under the Hague Convention. The litigation resulted in a settlement agreement executed in November 2021, which provided, among other things, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

In June 2023, plaintiffs sued Biofrontera Inc. in the District of Massachusetts, claiming that it had breached the settlement agreement by, among other things, engaging in unlawful marketing and off-label promotion of its therapies, causing substantial financial losses to plaintiffs. [Dkt. 1.] McGuireWoods entered an appearance on behalf of Biofrontera Inc. and the parties thereafter stipulated to the transfer of the case to this Court. [Dkt. 16.] In November 2023, plaintiffs filed an amended complaint that added the foreign defendants and alleged three causes of action: (i) breach of contract; (ii) false advertising under the Lanham Act; and (iii) deceptive and unfair trade practices

under Massachusetts law. [Dkt. 50.][3] To date, McGuireWoods has not entered an appearance on behalf of the foreign defendants in this case and has signaled that the firm will not represent the foreign defendants here.

In December 2023, plaintiffs moved for the issuance of letters rogatory requesting the German Central Authority to effect service of the summonses and complaint on the foreign defendants under the Hague Convention. [Dkt. 62.] The Court granted the motion and issued the letters in February 2024 [Dkt. 67], and plaintiffs promptly commenced efforts to serve the foreign defendants under the Convention. Service has not yet been perfected, but between May and June 2024, the German Central Authority transmitted correspondence to plaintiffs making several inquiries, and plaintiffs responded to those requests. [Dkt. 98.] It is not known when the German Central Authority will take further action on the service request under the Convention.

Meanwhile, this Court held an initial scheduling conference on May 1, 2024 with counsel for plaintiffs and Biofrontera Inc. During that conference, plaintiffs indicated their intent to move for alternative service on the foreign defendants in light of anticipated delays in service through the Hague Convention. Based on the ensuing discussion with counsel, the Court temporarily deferred formal discovery until the motion had been fully briefed. [Dkt. 88.] Plaintiffs thereafter filed the present motion, defendant Biofrontera Inc. filed an opposition, and plaintiffs filed a

---

[3] Biofrontera Inc. has moved to dismiss Counts II and III of the amended complaint. That motion is fully briefed and pending.

reply. [Dkts. 89, 90, 91-95, 96.] During a telephone call with counsel on August 1, 2024, the Court ordered plaintiffs and Biofrontera Inc. to commence discovery. [Dkt. 107.]

## II.    LEGAL STANDARDS

As relevant here, Rule 4(f) provides:

(f) *Serving an Individual in a Foreign Country.* Unless federal law provides otherwise, an individual . . . may be served at a place not within any judicial district of the United States:

    (1)    by any internationally agreed means of service that is reasonably calculated to give notice, such as those authorized by the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents;

    (2)    if there is no internationally agreed means, or if an international agreement allows but does not specify other means, by a method that is reasonably calculated to give notice:

        (A) as prescribed by the foreign country's law for service in that country in an action in its courts of general jurisdiction;

        (B) as the foreign authority directs in response to a letter rogatory or letter of request; or

        (C) unless prohibited by the foreign country's law, by:

            (i) delivering a copy of the summons and of the complaint to the individual personally; or

            (ii) using any form of mail that the clerk addresses and sends to the individual and that requires a signed receipt; or

    (3)    by other means not prohibited by international agreement, as the court orders.

Fed. R. Civ. P. 4(f). These provisions, as relevant here, are applicable to service of foreign corporations. Fed. R. Civ. P. 4(h)(2).

Accordingly, Rule 4(f) "governs service of process on defendants in foreign countries and sets forth three potential methods for service: (1) under the Hague Convention or other applicable international agreement; (2) in the absence of limitations under an international agreement, as a foreign country's law prescribes or permits or as directed by a foreign authority; or (3) by other means not prohibited by international agreement, as directed by the Court." *Celgene Corp. v. Blanche Ltd.*, Civ. No. 16-501 (SDW), 2017 WL 1282200, at *2 (D.N.J. Mar. 10, 2017). Additionally, as always, the method of service must be consistent with the constitutional guarantee of due process. *Heredia v. Transp. S.A.S., Inc.*, 101 F. Supp. 2d 158, 162 (S.D.N.Y. 2000).

The Third Circuit has not addressed whether service under the Hague Convention is the only possible avenue of service where a country is a signatory to the Convention. Some decisions, in this Court and others, contain language suggesting that it is. *See, e.g., RJ Brands, LLC v. Hangdong Trading Ltd.*, Civ. No. 21-4747 (JXN), 2021 WL 3206813, at *2 (D.N.J. July 28, 2021) ("The Hague Convention is 'the exclusive method of effecting service between signatories to the convention.'") (citation omitted). To the extent that these and similar statements are read categorically to preclude alternative service under Rule 4(f)(3) when two

6

countries are signatories to the Convention, this Court respectfully disagrees.[4] The better reading is that Rule 4(f)'s subparagraphs (f)(1), (f)(2), and (f)(3) each provide independent and sufficient bases for service. Accordingly, "[s]ervice pursuant to Rule 4(f)(3) is neither a last resort nor extraordinary relief," but "is merely one means among several [that] enables service of process on an international defendant." *Vanderhoef v. China Auto Logistics Inc.*,

---

[4] This language appears to stem from the Supreme Court's statements that "compliance with the Convention is mandatory in all cases to which it applies," and that where the "forum's internal law require[s] transmittal of documents for service abroad, . . . the Convention . . . provide[s] the exclusive means of valid service." *Volkswagenwerk Aktiengesellschaft v. Schlunk*, 486 U.S. 694, 705-06 (1988). But those statements simply mean that where service is to be effected through transmittal of documents abroad, the Hague Convention's procedures must be followed. That is a different issue than whether service under subparagraph (f)(1) is the only available means of service where a party is a signatory to the Convention, or whether attempted service under subparagraph (f)(1) is a prerequisite to alternative service under subparagraph (f)(3) by means other than transmittal of documents abroad. Indeed, "*Volkswagenwerk* does not hold or even suggest that the Hague Convention must always be complied with before alternative service is ordered." *Strabala v. Zhang*, 318 F.R.D. 81, 115 n.36 (S.D. Ill. Nov. 18, 2016). So, for example, because "Germany is a signatory to the Hague Convention, any service on [the foreign defendants] *in Germany* must comply with the Hague Convention." *Delta Constructors, Inc. v. Roediger Vacuum, GmbH*, 259 F.R.D. 245, 247 (S.D. Miss. 2009) (emphasis in original). The proper reading of *Volkswagenwerk*, then, is that the Hague Convention does not apply "where a plaintiff is able to perfect service according to the rules of civil procedure without transmitting the summons and complaint abroad," *e.g.*, by effecting alternative service domestically pursuant to subparagraph (f)(3). *Id.*; *accord Vanderhoef v. China Auto Logistics Inc.*, Civ. No. 18-10174 (CCC), 2019 WL 6337908, at *3 (D.N.J. Nov. 26, 2019) ("Courts have held that the Convention is not relevant when the proposed method of alternative service is to be effectuated domestically."); *Quantificare, Inc. v. Canfield Sci., Inc.*, Civ. No. 20-12305 (RMB), 2021 WL 8443796, at *3 (D.N.J. Jan. 13, 2021) (same).

Civ. No. 18-10174 (CCC), 2019 WL 6337908, at *2 (D.N.J. Nov. 26, 2019) (citations omitted). So plaintiffs are "not required to make a showing that service through ordinary channels [*i.e.*, the Hague Convention] would be futile . . . to be granted permission to effectuate service under Rule 4[(f)](3)," *U.S. Sec. & Exch. Comm'n v. One or More Unknown Traders in Sec. of Fortress Inv. Grp., LLC*, Civ. No. 17-1287 (CCC), 2018 WL 4676043, at *7 (D.N.J. Sept. 27, 2018), and "[c]ourts can grant Rule 4(f)(3) requests even where a plaintiff does not show that the other means are unduly burdensome or impossible." *Bravetti v. Liu*, Civ. No. 12-7492 (MAS), 2013 WL 6501740, at *3 (D.N.J. Dec. 11, 2013).[5]

Even still, "it is helpful to plaintiff's case to show some measure of difficulty in effecting service by usual means." *Bravetti*, 2013 WL 6501740, at *3 (citing *Vanleeuwen v. Keyuan Petrochemicals, Inc.*, Civ. No. 11-9495 (PSG), 2012 WL 5992134, at *2 (C.D. Cal. Nov. 30, 2012). To that end, "[a]lternative service is

---

[5] *Accord Nuance Commc'ns, Inc. v. Abbyy Software House*, 626 F.3d 1222, 1238 (Fed. Cir. 2010) ("While Appellees argue that service must have been attempted under the Hague Convention before alternative service methods can be employed, this court disagrees."); *Enovative Techs., LLC v. Leor*, 622 F. App'x 212, 214 (4th Cir. 2015) (not precedential) ("Rule 4(f)[(3)] does not denote any hierarchy or preference for one method of service over another."); *Commodity Futures Trading Comm'n v. Caniff*, Civ. No. 19-2935, 2020 WL 956302, at *5 (N.D. Ill. Feb. 27, 2020) ("The plain language of [Rule 4(f)] does not require a plaintiff to attempt service under Rule 4(f)(1) before seeking authorization to use an alternative means of service under Rule 4(f)(3)."); *Restoration Hardware, Inc. v. Lighting Design Wholesalers, Inc.*, Civ. No. 17-5553 (LGS), 2020 WL 7093592, at *4 (S.D.N.Y. Dec. 4, 2020) ("[T]here is no requirement that Plaintiff attempt service pursuant to provisions 4(f)(1) and 4(f)(2) before seeking permission of the court to effect service 'by other means,' pursuant to Rule 4(f)(3).") (citing authorities); *Bazarian Int'l Fin. Assocs., L.L.C. v. Desarrollos Aerohotelco, C.A.*, 168 F. Supp. 3d 1, 16 (D.D.C. 2016) (holding that plaintiff was "not required to first demonstrate 'a minimum threshold effort to serve Defendants via . . . the Hague Convention'").

regularly permitted where (a) there is no international agreement prohibiting service by the proposed method; (b) the proposed method of service is reasonably calculated to provide the defendant notice; and (c) [plaintiffs] have made a good faith effort to locate and serve defendants by traditional means." *Vanderhoef*, 2019 WL 6337908, at *2.

Ultimately, the Court "is afforded wide discretion when ordering [alternative] service of process under Rule 4(f)(3)." *U.S. Sec. & Exch. Comm'n v. Secure Cap. Funding Corp.*, Civ. No. 11-9116 (AET), 2011 WL 13143141, at *2 (D.N.J. Aug. 3, 2011); *see also Vanderhoef*, 2019 WL 6337908, at *2 ("The district court maintains the discretionary authority to determine whether the particularities and necessities of a case warrant alternative service".); *U.S. Sec. & Exch. Comm'n v. Dubovoy*, Civ. No. 15-6076 (MCA), 2016 WL 7217607, at *2 (D.N.J. Dec. 13, 2016).

III.   DISCUSSION

Pursuant to Rule 4(f)(3), plaintiffs request permission to effect service on the foreign defendants by serving McGuireWoods via email with the complaint and summonses for each defendant. They offer two alternative bases on which they say the Court may authorize such alternative service: (i) because McGuireWoods is the Biofrontera Group's domestic counsel; and (ii) because Biofrontera Inc. is the domestic agent of the foreign defendants.[6]

---

[6]   Given the discussion that follows, the Court need not and does not address whether Biofrontera Inc. is an agent of the foreign defendants.

9

The Court notes at the outset several uncontested facts relevant to its analysis. *First*, McGuireWoods has acknowledged that it does represent three of the foreign defendants—Biofrontera AG, Biofrontera Bioscience GmbH, and Biofrontera Pharma GmbH—in a proceeding that is now pending before the PTAB. Accordingly, McGuireWoods has the practical means to communicate with and transmit notice of this suit to its clients in Germany. *Second*, McGuireWoods and Biofrontera Inc. also acknowledge that the foreign defendants in fact already have notice of this litigation. *Third*, plaintiffs, for their part, acknowledge that traditional service under the Hague Convention was successfully completed on the foreign defendants in the prior Massachusetts litigation. With these facts noted, the Court's analysis follows.

### A. Neither the Hague Convention Nor the Due Process Clause Prohibit the Alternative Service that Plaintiffs Propose

For alternative service to be permissible under Rule (4)(f)(3), it must not be prohibited by the Convention or any other international agreement and it must be consistent with due process of law. To comply with due process, the method of service must be "reasonably calculated . . . to apprise [the foreign defendants] of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950).

Biofrontera Inc. does not argue that the Hague Convention or any other international agreement prohibits domestic service on the foreign defendants. Indeed, as plaintiffs correctly observe, the Supreme Court held in *Volkswagenwerk* that the Convention did not prohibit domestic service in the United States on a

German corporation's agent so long as that service complied with the Due Process Clause and (there) state law. 486 U.S. at 707. Nor does Biofrontera Inc. suggest, at least as a general matter, that domestic service upon a foreign defendant's counsel in the United States violates the Convention or any other international agreement. Finally, although Biofrontera Inc. objects to service through McGuireWoods on the basis that the firm does not represent the foreign defendants in this case, it does not identify any legal prohibition on effecting service in that context. Rather, Biofrontera Inc.'s objections are framed in prudential and normative terms rather than constitutional or treaty-based prohibitions.

The Court agrees that nothing in the Hague Convention or another international agreement prohibits service on a foreign defendant's United States-based law firm. "Courts have consistently held that service pursuant to Rule 4(f)(3) is proper when effectuated on a foreign individual's U.S. counsel if there is regular contact between the two, regardless of whether [counsel has] been explicitly provided the authority to do so." *Vanderhoef*, 2019 WL 6337909, at *4. And the Court agrees with plaintiffs that this is so even if the law firm does not represent the defendant in the matter in which service is to be effected, so long as there is a reasonable expectation that counsel is in contact with the defendant to be served so that adequate notice may be communicated. *See, e.g., In re Mercedes-Benz Emissions Litig.*, Civ. No. 16-991 (SDW), 2019 WL 29133309, at *4 (D.N.J. July 2, 2019); *Vanderhoef, supra*, 2019 WL 6337908, at *4. That inquiry is case- and fact-specific and dependent on the "particularities and necessities" of the case.

11

*Quantificare, Inc. v. Canfield Sci., Inc.*, Civ. No. 20-12305 (RMB), 2021 WL 8443796, at *2 (D.N.J. Jan. 13, 2021) (citation omitted). Ultimately, the Court sees no legal barrier in the Convention to authorizing service in the manner that plaintiffs propose.

The Court also concludes that, based on the record in this case, service on the foreign defendants via McGuireWoods would be reasonably calculated to give notice to the foreign defendants and therefore would be consistent with due process of law. The Court rests this conclusion on the following combination of facts.

*First,* there is no reasonable debate that the foreign defendants are aware of the present litigation. Because they are on notice of the claims against them, the Court can be confident, under all the circumstances, that they are aware of the status of the proceedings and will receive notice of an order from this Court permitting alternative service through McGuireWoods and their resulting need to respond to the claims asserted against them.

*Second,* McGuireWoods presently represents three of the five foreign defendants in an *inter partes* review proceeding pending before the PTAB. Biofrontera Inc. argues that plaintiffs have not shown that McGuireWoods is in "regular contact" with the foreign defendants, [Dkt. 92] at 11-14, but it is hard to see how that is so. McGuireWoods filed the petition on behalf its clients— Biofrontera AG, Biofrontera Bioscience GmbH, and Biofrontera Pharma GmbH, as well as, notably, Biofrontera Inc.—on April 30, 2024. [Dkt. 89, Ex. 18.] That was one day before the Court held the Rule 16 scheduling conference in this case.

12

The firm also filed in the PTAB an executed power of attorney that authorized the firm "to transact all business" in the PTAB proceedings on behalf of each of those entities. *Id.* Biofrontera, Inc. suggests that this single representation, which is unrelated to the issues presented in this case, is "insufficient" to justify alternative service in the manner that plaintiffs request. [Dkt. 92] at 13. Again, that is a prudential consideration and not a legal one. The critical point, in the Court's judgment, is not the number of representations that the firm has or the similarity of the proceedings to this one, but the likelihood that the firm is able to communicate with and provide notice of service to the foreign defendants.

*Third*, each of the foreign defendants are members of the same corporate family and are located at the same address in Germany. Indeed, Biofrontera AG—which McGuireWoods represents in the PTAB proceeding—is the parent company of the group and wholly owns the other four foreign defendants.[7] It is exceedingly likely that if McGuireWoods provides the amended complaint and summonses to

---

[7]     *See DUSA Pharmaceuticals, Inc., et al. v. Biofrontera Inc., et al.*, Civ. No. 18-10568 (RGS), Dkt. 60 (D. Mass. July 31, 2018) (Rule 7.1 disclosure statement for Biofrontera AG, Biofrontera Bioscience GmbH, and Biofrontera Pharma GmbH); *Biofrontera AG 2023 Annual Report*, at 1-2 (stating that "the Biofrontera Group . . . consists of a parent company, Biofrontera AG[,] and four wholly owned subsidiaries in Germany," that "Biofrontera Bioscience GmbH, Biofrontera Pharma GmbH, Biofrontera Development GmbH and Biofrontera Neuroscience GmbH are located at the parent company's headquarters in Leverkusken, Germany," and that in addition to Biofrontera Bioscience GmbH, and Biofrontera Pharma GmbH, "Biofrontera Development GmbH and Biofrontera Neuroscience GmbH . . . are additional wholly owned subsidiaries of Biofrontera AG"), *available at* https://www.biofrontera.com/fileadmin/files/PDFs/Financial_Reports/2023/20240429_AR_2023_EN.pdf (last visited Aug. 20, 2024).

the three clients that it represents before the PTAB, that all five foreign defendants will receive formal and adequate notice of this case.

*Fourth*, although not dispositive on its own, the Court finds it relevant that McGuireWoods represented all five of the foreign defendants in the prior Massachusetts litigation, the settlement of which gives rise to this case. ▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

*Finally*, buttressing all of this is McGuireWoods's own public statement in December 2021 that it considered itself—at least at that time—the "go-to U.S. counsel for Biofrontera AG for the past six years," having represented the parent company in a range of matters, including various securities offerings, mergers and acquisitions matters, and "various litigation matters." [Dkt. 89-21.] Given that relationship, the Court finds it inconceivable that McGuireWoods lacks the present ability to communicate with and provide to the foreign defendants summonses and the complaint.

The Court therefore concludes that domestic service on the foreign defendants through McGuireWoods is not prohibited by the Hague Convention or

14

other international agreement and, on this record, would be consistent with due process of law.

B. ███████  Not a Basis to Reject the Alternative Service that ███████

Biofrontera Inc. separately argues that the Court should not permit alternative service because ███████████████████████████████████████████ ███████████████. The Court disagrees. Accepting for argument's sake ███████████████████████████████████████ ██████████████████ the Court does not see how that has anything to do with service. ███████████████ ███████████████████████████████████████████ ███████████████████████████████████████████ ███████████████████████████████████████████ ███████ the Court sees no barrier, legal or prudential, to permitting the alternative service that plaintiffs propose.

C. <u>Prudential Reasons Counsel in Favor of Allowing the Hague Convention Process to Unfold</u>

All that said, the Court does not agree with plaintiffs, at this juncture, that "[t]here is no compelling reason to wait" for the Hague Convention process to play out. [Dkt. 90] at 10. To the contrary, the Court sees several prudential reasons

15

why it should defer alternative service for some additional period of time to allow the traditional process to unfold.

As the Court has described, plaintiffs successfully served the foreign defendants under the Hague Convention in the earlier Massachusetts litigation, which serves as a basis to anticipate that efforts here will be similarly successful. The Court issued letters rogatory in February 2024, and so efforts at service under the Convention have been pending only for about six months. And the German Central Authority has sent correspondence to plaintiffs inquiring whether their causes of action are asserted pursuant to, or could result in the application of, a so-called "split-recovery statute"—in which case German law would preclude service on the foreign defendants under the Convention. *See* [Dkts. 98, 108.] Plaintiffs, for their part, have responded formally to the German Central Authority stating that they do not seek application of or relief under a split-recovery statute. *See* [Dkts. 98-6 – 98-10.] The upshot is that the formal request for service under the Hague Convention is under consideration by the German Central Authority. In a context in which the German Central Authority perfected service under the Convention against the same foreign defendants just a few years ago, the Court sees merit in permitting some additional time for the traditional process to unfold.

At the same time, while the Court has concluded above that domestic service through McGuireWoods is legally permissible, that does not mean that service through a law firm that does not represent a foreign defendant in the proceeding in question is typical or should be the norm. The Court is mindful, moreover, that

16

although McGuireWoods represents some of the foreign defendants in the PTAB proceeding and represented all of them in the past, for whatever reason it appears that the firm will not represent those defendants in this case. In this context, the Court believes that a more cautious approach and deference to the Hague Convention process is in order at this time.

The overall thrust of plaintiffs' concern with the Hague Convention is the uncertain timing and the potential for delays to these proceedings. The Court shares those concerns and in no event will it permit the case to languish. As noted, however, the Court initially deferred the commencement of formal discovery between plaintiffs and Biofrontera Inc., and only recently ordered those parties to begin discovery in earnest. The operative scheduling order sets a deadline of February 2025 for the completion of fact discovery. While the Court need not make any firm decisions now, given the deferred commencement of discovery, the Court believes it likely that modifications to the schedule will be necessary in any event, irrespective of modifications once the foreign defendants appear and respond to the amended complaint. The result is that no undue prejudice will result to the parties from permitting the German Central Authority a few more months to address the request for service under the Convention.

Balancing the considerations above, the Court believes it prudent to permit the Hague Convention process to play out a bit more, and so the Court will deny plaintiffs' motion at this time. These prudential considerations, however, will not last forever, and soon enough will yield to the need to move this case forward

17

expeditiously. Accordingly, plaintiffs may renew their motion for alternative service pursuant to Rule 4(f)(3) if traditional service under Rule 4(f)(1) and the Convention has not been effected by the end of this calendar year.[8]

## IV. CONCLUSION

For the reasons stated, plaintiffs' motion for alternative service [Dkt. 89] is DENIED without prejudice. On or before September 3, 2024, the parties shall file via CM/ECF either (i) a joint motion to seal pursuant to Local Civil Rule 5.3(c) if they believe redactions to this Memorandum Order are necessary, or (ii) a letter stating that the Order may be unsealed in its entirety.

IT IS SO ORDERED this 20th day of August, 2024.

J. BRENDAN DAY
UNITED STATES MAGISTRATE JUDGE

---

[8] If the German Central Authority denies plaintiffs' request for service under the Hague Convention before the end of the calendar year, plaintiffs may renew their motion immediately.